SO ORDERED: July 25, 2006.

_____
**Frank J. Otte
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| KHADIJAH MUHAMMAD ) | CASE NO. 05-33234-FJO-13 |
|     Debtor ) | |

### ORDER ON TRUSTEE'S OBJECTION
### TO CONFIRMATION OF PLAN

This matter came before the Court upon the filing of the Trustee's Objection to Confirmation of Debtor's Chapter 13 plan.  The Court held a hearing on the Trustee's Objection to Confirmation on June 21, 2006.  Robert Brothers, the Chapter 13 Trustee (the "Trustee"), appeared at the hearing in support of his Objection.  Mark Zuckerberg and Sally O'Connor appeared for the Debtor. Richard Shea appeared in support of an amicus brief he filed on behalf of the law firm of Tom Scott and Associates .   This matter is now ready for the Court's consideration.

## Discussion

The Debtor filed his Chapter 13 Petition and Plan November 14, 2005. The Chapter 13 Trustee filed an objection to said plan asserting the following:

1. The debtor failed to state the amount of equal monthly payments (EMA) that creditor Ameriquest is to receive under the plan on account of its lien on Debtor's automobile;
2. The plan calls for Adequate Protection Payments to Secured Creditors to continue post-confirmation until administrative expenses, which include debtor's attorney's fees, are paid in full. Trustee believes adequate protection payments should terminate upon confirmation and secured creditors EMA payments should commence immediately and be paid concurrently with administrative expenses (debtor's attorney's fees).
3. Trustee's computer program stops adequate protection payments upon confirmation and trustee cannot, therefore, continue adequate protection payments post-confirmation.

For the reasons set forth below, Trustee's Objection to Confirmation of Debtor's Chapter 13 plan is sustained in part and denied in part.

### I. DEBTOR, NOT THE TRUSTEE, MUST DETERMINE THE AMOUNT OF EMA PAYMENTS TO BE PAID SECURED CREDITORS

Debtor's counsel, in open court, advised the Court that it is the debtor's duty, not the trustee's duty to determine EMA payments. Debtor, in his amended plan will include an appropriate EMA amount for the secured creditors with an interest in personal property.

### II. TRUSTEE'S OBJECTION TO THE PLAN BASED UPON HIS COMPUTER PROGRAM'S INABILITY TO CALCULATE AND PAY ADEQUATE PROTECTION PAYMENTS POST-CONFIRMATION IS MOOT

2

Trustee, in open court, advised the Court that he has discovered that his computer program can be modified to continue adequate protection payments post-confirmation. Therefore, this issue is moot.

### III. ADEQUATE PROTECTION PAYMENTS TO THE SECURED CREDITOR MAY CONTINUE UNTIL CREDITOR'S EMA PAYMENTS COMMENCE UNDER THE PLAN AND ADMINISTRATIVE EXPENSES, WHICH INCLUDE DEBTOR'S ATTORNEY FEES AND CREDITOR'S ADEQUATE PROTECTION PAYMENTS, ARE TO BE PAID BEFORE EMA PAYMENTS ARE MADE TO SECURED CREDITORS.

This Court has determined that adequate protection payments can, and, in fact, must continue post-confirmation.

There have been significant recent changes to the Bankruptcy Code enacted as the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). BAPCPA not only addresses the issue of adequate protection for secured creditors, but also the treatment of secured creditors claims when the Chapter 13 plan proposes to pay the secured creditors claim in equal monthly installments (EMA). Prior to the enactment of BAPCPA, secured creditors voiced concerns about protecting their interest in their collateral during the interim between filing the petition and the time they began receiving payments on their secured claim under the plan. Under the terms of many Chapter 13 plans, secured creditors did not begin receiving payments under the plan for months, and in some cases, more than a year. While waiting for payments to commence, there was a substantial risk to secured creditors of diminution in value of the collateral without any protection. BAPCPA intended to cure this problem. It codified the requirement of adequate protection payments to secured creditors to protect against the diminution in value of their collateral until they began

receiving payments on their secured claim.  In the only reported decision to deal with this issue, the Court noted:

> Two practices existed before **BAPCPA** that were viewed, by many, as abusive.  **First, chapter 13** plans were being confirmed by bankruptcy courts that deprived car lenders of any **payments** for a number of **months.**  Prior to its amendment, § 1325(a)(5) did not explicitly require **adequate protection payments—a chapter 13** plan could "provide **payment** to secured claim holders in an amount not sufficient to keep pace with depreciation of the underlying collateral."  Hon. Keith Lundin and Henry Hilderbrand, III, *Section by Section Analysis of* **Chapter 13** *After* **BAPCPA,** SLO68 ALI-ALB 65, 94 (2005).  Or a plan could provide no **payment** at all for a period of time.  Forcing "creditors with security interest…to await **payment** on their secured claims…often resulted in uncompensated depreciation of collateral during the pendency of a **chapter 13** case.  In the worst-case scenario, a creditor could wait as long as twenty-four **months** before receiving distributions on an allowed secured claim."  Richard Kikpatrick, *Selected Creditor Issues Consumer Protection Act of 2005,* 79 Amer.Bankr.L.J.817, 836(2005).
>
> To **protect** its interest, a lender could object to confirmation and argue the **adequate protection** issue with no assurance of success.  If the objection failed, and the **first payment** to the car lender was scheduled for **month**  eight, the debtor could use the car for the **first** seven **months** of the plan with no **payment** to the car lender.  Pursuant to § 1307(b), the debtor could convert his case at any time to a case under **chapter 7.** Under this scenario, an abusive debtor could manipulate the system and get free use of a quickly depreciating asset without making **adequate protection payments**.  When the case was converted to a case under **chapter 7,** the lender could repossess its depreciated asset, but the debtor would be discharged of his obligation to the car lender, after having free use of the car for many **months.**   Section 1325(a)(5)(A)(iii)(II) now **protects** against that abuse by assuring—through **adequate protection payments**—that the lender's position will not worsen during the initial stages of a **chapter 13** case.

See <u>In re DeSardi</u>, *et*. *al*., 2006 WL 1061893 (Bankr. S.D.Tex) at 585 & 586.

In addition to the changes to 11 USC §1325, BAPCPA also modified 11 USC §1326 to codify when the adequate protection payments must begin. It states: "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of filing of the plan or the order for relief, whichever is earlier, in the amount…that provides adequate protection directly to a creditor holding an allowed claim secured by personal property …". 11 USC §1326(a). Thus, it is clear that secured creditors must receive adequate protection payments at the outset of the case. The debtor's plan complies with this requirement.

Although BAPCPA provides when adequate protection payments must start, it is silent as to when they should end. Since the idea is to protect secured creditors until they receive payment on their claim under the plan, then adequate protection payments must continue until EMA payments commence. To hold otherwise would defeat the purpose of the adequate protection payment requirement under BAPCPA.

Although the Bankruptcy Code is silent on the issue of when adequate protection payments must stop, it is not silent on when administrative expenses, which include debtor's attorney's fees, must be paid. Section 1326 spells out when and in what order payments are to be made in a Chapter 13 proceeding. More specifically, 1326(b) requires that administrative expenses, which include attorney fees, must be paid first. It states that before or at the time of each payment to creditors under the plan, there shall be paid any unpaid claim of the kind specified in section 507(a)(2) of this title. Section 507(a)(2) claims are "administrative expenses allowed under section 503(b) of this title…" which are expenses which specifically include "compensation and expenses awarded under section 330(a)…". Section 330(a) expenses are expenses which specifically include in chapter 13 case, under Section 330(a)(4)(B), that are "reasonable compensation to the debtor's attorney for

5

representing the interests of the debtor in connection with the bankruptcy case…". Thus, the Bankruptcy Code makes it clear that debtor's attorney's fees are §507(a)(2) administrative expenses and, therefore, must be paid first under Section 1326.

Current case law supports this position. See In re DeSardi, supra. In In re DeSardi, the court states:

> Section 1326(b)(1) prohibits the chapter 13 trustee from making any payments to creditors under the plan until the § 507(a)(2) payments have been made.

In re DeSardi, *infra* at 584.

The court in DeSardi held that administrative expense claims must be paid in full before EMA payments commence. The Court ruled that both adequate protection payments to secured creditors and administrative expenses, which include debtor's attorney's fees, are §507(a)(2) claims which fall within Section 1326(b)(1) and must be paid before other creditors receive payments under the plan.

The DeSardi court acknowledged that there is disagreement as to whether section 1326(b)(1) requires administrative expenses to be paid in full before payment to other creditors or whether only partial payment to administrative expenses is sufficient before payments to other creditors. The Court found the reasoning of In re Harris, 304 B.R. 751(Bankr.E.D.Mich.2004) to be most persuasive. Harris came to two important conclusions. First, it concluded that the language of 1326 required that administrative expenses must be paid before or simultaneously with payments to other creditors under the plan. It reached this conclusion by looking at the plain language of §1326(b) and determined the phrase "there shall be paid [administrative expenses]" meant the administrative expenses must have already been paid or will be paid simultaneously with payments to other creditors.

Second, it ruled not only must administrative expenses be paid, it also concluded the administrative expenses must be paid in full either before other creditors receive any payments or be paid in full simultaneously with the payment to other creditors. In other words, a partial payment of the administrative expense claims does not satisfy the requirement that administrative expense claims "shall be paid at or before the time" any other creditors receive payments.  Specifically, the court stated:

> There is a dichotomy in the language of the statute that supports the interpretation in *Harris*.  The statute mandates that any unpaid § 507(a)(2) claim be paid before there are payments to other creditors under the plan. "[P]ayment to creditors under the plan" refers to periodic partial payments on claims.  Conversely, "there shall be paid any unpaid claim" mandates full payment of the claim.  This contrasting terminology requires full payment of any administrative claim before (or at the time of) general payments should commence under a chapter 13 plan. *See Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 357, 125 S.Ct. 694, 160 L.Ed2d 708 (2005); *Sosa v. Alverez-Machain,* 542 U.S. 692, 712, 124, SCt. 2739, 159 L.Ed2d 718 (2004)

In re DeSardi, *infra*, at 585.

DeSardi further supports this interpretation by reference to the legislative history of section 1326:

> The legislative history of § 1326 also supports the understanding that § 507(a)(2) claims are to be paid first and in full.  The House Report for The Bankruptcy Reform Act of 1978 states that "Subsection [1326(b)(1)] requires that before or at the time of each payment any outstanding administrative expenses and any percentage fee due for a private standing chapter 13 be paid in full." H.R.Rep. No. 95-595, 430 (1978).  The Senate Report from the same session of Congress states that "Section 1326 supplements the priorities provisions of section 507.  Subsection [1326(b)(1)] requires accrued costs of administration and filing fees, as well as fees due the chapter 13 trustee, to be disbursed before payments to creditors under the plan." S.Rep. No. 95-989, 142 (1978).

In re DeSardi, *infra*, at 585.

The code sections which establish that  attorney fees are to be administrative expenses  must be paid first were not substantively changed by the BAPCPA

7

amendments. It has been the practice in this jurisdiction to pay attorney fees first. This practice was justified by the Bankruptcy Code prior to the enactment of BAPCPA and should not change unless BAPCPA clearly requires it. Since BAPCPA has no such requirement, then the practice should continue.

There is also a very practical reason for paying attorney fees first. If attorneys are not fairly and promptly paid for their services there is a substantial risk that many of the bankruptcy bar, which is comprised of a number of experienced attorneys, will not continue to practice in the bankruptcy arena. Such a result could be disastrous for debtors and the Court. If there were not a sufficient number of experienced bankruptcy practitioners to represent debtors, there would be a substantial increase in pro se filings. Chapter 13's are no longer a simple proceeding and are rife with pitfalls for unwary debtors. An experienced bankruptcy bar is essential to the operation of a smooth and fair bankruptcy process. Clearly, attorney fees should be paid simultaneously with the adequate protection payments.

DeSardi also addressed the issue of when EMA payments must commence. It concluded that the Bankruptcy Code does not require EMA payments to commence upon confirmation.

> The equal payment provision does not state that its requirements must be met beginning in month one of the plan. Nor does the section state that payments must be equal "as of the effective date of the plan." In contrast, the immediately preceding section of § 1325(a)(5)(B)(ii) does use such language. That section states that "Except as provided in subsection (b) the court shall confirm a plan if…with respect to each allowed secured claim provided for by the plan…the plan provides that…the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim…" 11 U.S.C. § 1325 (a)(5)(B)(ii). While perfectly aware of its drafting options, Congress wrote "[I]f…property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in

> equal monthly amounts [.]" 11 U.S.C. § 1325(a)(5)(B)(iii)(I). Most importantly, subsection 1325(a)(5)(A)(iii)(II) explicitly requires that payments be not less than the amount to provide adequate protection "during the period of the plan." No similar language exists in subsection (I). The Court understands this clause to require payments to be equal once they begin, and to continue to be equal until they cease.

<u>In re Desardi</u>. *Infra* at 582.

<u>DeSardi</u> clearly points out that the subsection dealing with the value to be distributed to the secured creditor requires the value "as of the effective date of the plan" be not less than the allowed amount of the claim. See 11 USC §1325(a)(5)(B)(ii). But it also points out that in the subsection dealing with the creditor being paid in periodic payments, there is no provision that the periodic payments (i.e. EMA payments) must commence on the "effective date of the plan". See 11 USC §1325(a)(5)(B)(iii)(I) and (II). In fact, it holds to the contrary:

> Section 1326(b)(1) requires that § 507(a)(2) claims be **paid** before, or at the same time as, the **payment** of other claims **paid** by the **chapter 13** trustee. These claims include, for example, both **adequate protection payments** and **payments** to debtor's counsel. Pursuant to § 1326(b)(1), amounts payable to a car lender in excess of the amount of **adequate protection** may not be **paid** until all § 507(a)(2) **payments** have been made.

<u>In re DeSardi</u>, *infra*, at 584.

<u>DeSardi</u>, through its careful statutory interpretation, shows that the Bankruptcy Code, as amended by BAPCPA, requires:

1. Adequate protection payments commence within 30 days of the petition date or plan filing, whichever is earlier and continue until EMA payments commence;
2. Administrative expense payments, including debtor's attorney's fees, are to be paid in full before other creditors receive any payments (except adequate protection payments);

9

      3.      EMA payments for secured creditors should not commence until administrative expenses have been paid in full and do not need to commence upon confirmation of the plan.

This Court agrees with the <u>Desardi</u> analysis. In the present case, the Debtor's plan meets the requirements as set forth above. It proposes to pay the secured creditor adequate protection to protect against diminution in value of collateral until it begins making EMA payments to the secured creditor. Second, it proposes to pay administrative expenses in accordance with the Bankruptcy Code ( i.e. it assures all administrative expenses, including debtor's attorney's fees, are paid in full at or before other creditors receive payments under the plan). Third, it provides EMA payments to the secured creditor to assure the creditor is paid in full on its secured claim.

Accordingly, it is ORDERED, ADJUDGED AND DECREED, that:

1. The Trustee's Objection to confirmation is sustained as to the requirement that the Debtor, not the Trustee, must determine the amount of monthly EMA payments and Debtor's amended plan must provide the EMA amount to be paid to the secured creditors.

2. The Trustee's Objection to confirmation because of his computer program's inability to continue Adequate Protection payments post-confirmation is moot since the Trustee has informed the Court his computer program can make the required distributions.

3. The Trustee's Objection as to allowing Adequate Protection payments post-confirmation until all attorney fees have been paid is DENIED and the Trustee's Objection to paying debtor's attorney fees in full before commencing EMA payments under the plan is DENIED for the reasons set forth above. The Debtor's plan should provide for

concurrent payment of adequate protection payments and attorney fee payments until the attorney fees are paid in full; after which EMA payments may commence under the plan.

###